## MERRILL v. PHŒNIX MUT. LIFE INS. CO. OF HARTFORD, CONN.

### No. 4444.

District Court, D. Massachusetts.

March 2, 1939.

Brenton K. Fisk, of Aldridge & Fisk, all of Boston, Mass., for plaintiff.

Walter I. Badger, Jr., of Badger, Pratt, Doyle & Badger, all of Boston, Mass., for defendant.

SWEENEY, District Judge.

This is a suit in equity in which the plaintiff seeks a determination of her right, as a beneficiary thereunder, to recover the double indemnity benefits provided for accidental death in four policies of life insurance issued on the life of Louis Faxon Merrill.

The decedent was insured under four policies of insurance written by the defendant aggregating $22,000. Upon receiving proof of his death, which occurred on September 19, 1934, the defendant commenced to make, and has continued to make regular payments to the plaintiff as provided in the policies. The plaintiff now contends that she is entitled to receive from the defendant the balance necessary to make up the double indemnity because death occurred by reason of an accident within the meaning of the terms of the policies. The defendant denies the allegations of accidental death, and further says that recovery is barred by reason of laches, and by reason of the plaintiff's failure to comply with the terms of the policies with regard to proof of death.

Statements of fact herein are intended as findings of fact, and statements of legal conclusions, as rulings of law, in

accordance with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The policies declared on were issued by the defendant, and were standard life policies, containing a provision for double indemnity for accidental death. The plaintiff was named beneficiary in each of them.

The decedent was thirty years of age, and shortly before his death, submitted to a surgical operation for appendicitis. The plaintiff, who was the wife of the insured, was a physician licensed to practice. Prior to his operation she examined him. Noting a condition that was indicative of appendicitis, she drove with the insured about one hundred miles to the Grace Hospital in Detroit, Michigan, arriving there at about 4:00 o'clock in the afternoon. The insured was operated on at 5:15 o'clock of the same afternoon. The plaintiff was present at the operation, but did not assist in it. She described the operation as the usual appendectomy, and noted nothing irregular about it.

Upon recovering from the anesthetic the patient immediately reacted normally, vomiting somewhat, and was a little restless. His subsequent condition indicated that something other than a normal recovery was occurring. His condition grew worse, and several days later an enterostomy was performed under novocain to provide an artificial opening into the intestine through the abdominal wall. The doctor performing the enterostomy examined several loops of intestine presented at the opening, and detected no presence of peritonitis. The next day the patient died. The hospital record indicates that death was due to "Appendicitis Subacute Catarrhal—Post Operative Ileus". An ileus is defined by Webster to be: "A morbid condition due to intestinal obstruction, marked by complete constipation, griping pains in the abdomen, which is greatly distended and in the later stages by vomiting of fecal matter."

An autopsy was performed on September 19, 1934, and the pathological diagnosis at that time was: "Laparotomy for appendectomy. Acute purulent generalized peritonitis."

At the time that the autopsy was performed it was noted that: "The loop of gut in the wound is covered by a slimy, gray-green exudate. The peritoneum is everywhere covered by a fibrinopurulent exudate. The stump of the appendix was well walled off and surrounded by thick pus. The small intestine was markedly distended. Omentum was massed and matter about the stomach. There was a loop of gangrenous gut."

The plaintiff was not advised of the results of the autopsy, and she took no means to ascertain them. As a physician, she suspected before the enterostomy was performed that something irregular had occurred either at the operation or during the convalescence of the patient immediately thereafter. On September 24th, the plaintiff executed a proof of death, and submitted it to the defendant, in which she laid claim to the benefits of the insurance, not, however, making any claim for double indemnity because of accidental death. As previously stated, the benefits have been paid to her, or are being paid to her, as originally claimed. Accompanying the proof of death submitted by her was a statement from Dr. Charles S. Kennedy in which he gave the cause of death as diffuse peritonitis of five or six days duration, and gave as a contributing factor "chronic appendicitis". In answer to a specific question (6.d.), the doctor certified that death was not due to suicide, homicide or accident.

About two years later in December of 1936, the plaintiff filed a claim for the double indemnity benefits of the policies, alleging for the first time that the cause of her husband's death was accidental within the meaning of the terms of the policies. It was about that time that she first saw the hospital report on her husband's death. It was on the basis of the disclosure in that report that she filed her claim with the company, and for the denial of which she has brought this suit. The contention of the plaintiff is that, during the operation for the removal of the appendix, the attending physician, in sewing up the wound, caught a piece of the intestine or gut in the suture that he was making which caused the inclosed portion of the gut to mortify and produce a gangrenous infection, resulting in death.

To maintain the burden of proving that death was accidental, the plaintiff must show by clear and convincing evidence either (1) that the cause of death was other than disclosed in the hospital records and in the autopsy report, or (2) that the cause of death as disclosed in the autopsy or the hospital record was founded

on an accident within the meaning of the policies.

On the first proposition the evidence is clear that death was due to either or both of the causes stated in the hospital record. An expert called by the plaintiff testified that the findings contained in the autopsy report warranted the conclusions reached. There was no evidence to show that the findings made in the report were erroneous. The plaintiff has therefore failed to show that the cause of death was other than that reported in the hospital record or the autopsy report.

As to the second proposition, the plaintiff has failed to show that the peritonitis or the post operative ileus was caused by an accident within the meaning of the policies. The uncontroverted testimony was that both the post operative ileus and the peritonitis might be induced by several factors, only one of which might be the cause assigned by this plaintiff—namely the tying of the intestine in closing the appendectomy wound. There are other non-accidental causes for either of these conditions. The ileus might be caused by adhesions, by introsusception, or from some other accidental or natural cause within the abdominal cavity. Peritonitis might be an end result of some prior infection located within the body of the person and having nothing to do with an accident. The plaintiff has failed to show that the cause of death disclosed in the hospital report or in the autopsy report was the result of an accident. I therefore rule that the plaintiff has failed to produce evidence to warrant a finding that the insured came to his death by accidental means within the terms of the various policies, and is therefore not entitled to the relief sought.

A decree may be prepared in accordance with the above.